[No. 28832. Department Two. November 25, 1942.]

KENNETH SHYVERS *et al., Appellants,* v. THE CITY OF
BREMERTON *et al., Respondents.*[1]

*Marion Garland, Sr.,* and *Marion Garland, Jr.,* for
appellants.

*James W. Bryan, Jr.,* and *John C. Merkel,* for re-
spondents.

DRIVER, J.—Plaintiffs brought this action against the
city of Bremerton and its chief of police to enjoin the
enforcement of an ordinance of the city, on the ground
that such ordinance is unconstitutional and void. Its
pertinent parts read as follows:

[1]Reported in 131 P. (2d) 187.

"Section 1. It shall be unlawful for the proprietor of any restaurant, tavern or other public place or establishment in the City of Bremerton, to allow the playing of records or music therein by mechanical means or otherwise for a fee to be charged patron[s] of such establishment desiring such music to be played, without having obtained a 'For Hire' music license as hereinafter provided.

"Section 2. The fee for such license shall be $12.50 per annum, payable annually in advance on the 1st day of July of each year, shall be issued by the City Clerk on the application of the proprietor of the place or establishment sought to be licensed and shall run to the applicant and the place of business sought to be licensed. Such license shall not be transferred without the consent of the City Commission.

"Section 5. Violation of any of the provisions of this ordinance shall be punishable by a fine not exceeding One Hundred ($100.00) Dollars, or by imprisonment in the City Jail not exceeding thirty (30) days, or by both such fine and imprisonment."

The material facts, which are not in dispute, are these: Plaintiffs are engaged in what is known as the "wired music" business. In the city of Bremerton, they operate a central studio where phonograph records are played and the music is carried by telephone wires to various establishments. Each such outlet establishment is equipped with cylindrical microphone boxes in which there are slots for the deposit of coins. There is a printed list of the titles of musical selections on each box, and each one is numbered. When a customer deposits a coin in a box, a telephone connection with the central studio is automatically established, and the customer can then give the operator the number of the particular piece of music to be played. The music is played by a phonograph record at the studio and is carried by wire back to the outlet establishment.

At the time of the commencement of their action, plaintiffs, under written contracts, had their equip-

ment installed in forty-six outlet establishments in Bremerton. Each of such contracts provided that the plaintiffs collect the coins dropped into the microphone boxes and divide them as follows: The first six dollars of the weekly returns was to be retained by the plaintiffs, the remainder to be divided equally between the parties.

After trial without a jury, the lower court concluded that plaintiffs had no right to maintain the action, and also held the ordinance constitutional and valid. Findings of fact, conclusions of law, and judgment were entered accordingly, and plaintiffs have appealed.

The first of the stated grounds of decision is, we think, controlling.

The ordinance, in effect, imposes an annual license fee, in the nature of an excise tax, upon the proprietor of any "restaurant, tavern or other public place or establishment" for the privilege of allowing music to be played therein for a fee to be paid by the patrons. It is not limited to establishments in which appellants' equipment is installed. Any such proprietor who furnishes orchestra music at the expense of his patrons or maintains an automatic coin-in-the-slot phonograph in his place of business comes within the ordinance. If the proprietor allows music thus to be played in different ways and by any number of different mechanical devices, he is required to pay only one license fee. If the plaintiffs should install their equipment in some establishment, such as a private club, not named in or covered by the ordinance, no license fee, or tax, would be imposed. The fee, in the form of an annual lump-sum payment, is not measured by, or in any way dependent upon, the returns from the sale of the music. Its incidence is upon the proprietor and not upon the one who plays the music or furnishes the mechanical contrivance by which it is played. In case of a viola-

tion of the ordinance by one of appellants' outlet establishments, the proprietor, and not the appellants, would be guilty of an unlawful act and subject to fine or imprisonment, or both. Any burden which the license fee may impose upon the appellants' business is purely incidental.

█ Rem. Rev. Stat., § 179 [P. C. § 8255], cited by appellants, reads: "Every action shall be prosecuted in the name of the real party in interest, except as is otherwise provided by law." The construction which should be placed upon such a statute is stated in 39 Am. Jur. 869, § 16, as follows:

"Real party in interest statutes are not intended to give a new cause of action where none existed before, or to enlarge or diminish existing rights, but merely to simplify matters of pleading and procedure generally, and to adopt substantially the rule prevailing in equity which permits all actions to be instituted by the equitable or beneficial owner of the cause of action. They merely authorize actions to be maintained in the name of the real party in interest instead of in the name of a fictitious or formal party, where there is a cause of action. Once it is determined that a given person is the real party in interest as to a certain chose of action under the applicable rules of the substantive law, he alone may bring an action to enforce it and such action must be brought in his own name."

Appellants alleged in their complaint that, under their contracts with the outlet establishments, they had agreed to pay the license fees imposed by the ordinance. The specimen contract which they introduced in evidence at the trial, however, contained no such provision, and the trial court properly found that appellants were not obligated by contract to pay the license fee of any establishment.

Appellants offered to prove that it has been the custom of the trade for the person selling music by "juke boxes," or any other kind of mechanical device, to pay

the license fee of the outlet establishment. The trial court refused the offer, and we think it committed no error in so doing. Voluntary assumption of the burden of the fee by appellants would create no legal obligation on their part to pay it or put them in a position to contest its validity.

It is our conclusion that appellants were not the real parties in interest, and, therefore, did not have the right to maintain the action.

Judgment affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.